UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Matthew Hernandez, | Case No. 24-cv-27 (KMM/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| B. Eischen, FPC Duluth, Warden, | |
| Respondent. | |

Before the Court is Matthew Hernandez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) In his petition, Mr. Hernandez challenges the Federal Bureau of Prison's ("BOP") calculation of his First Step Act ("FSA") time credits ("FTCs") toward an earlier transfer to a Residential Reentry Center ("RRC") or home confinement. (*Id.* at 1, 4.) The petition comes before the Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] and it has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Mr. Hernandez's petition be denied, and this action be dismissed.

---

[1] Mr. Hernandez does not bring his habeas petition pursuant to 28 U.S.C. § 2254. Nevertheless, the Court may apply the Rules Governing Section 2254 Cases to his petition. *See* Rule 1(b).

## BACKGROUND

A court in the Central District of California sentenced Petitioner Matthew Hernandez to a 156-month term of imprisonment, followed by 10 years of supervised release, for his conviction of the distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 7 (Winger Declaration, Ex. A) ¶ 3.) Mr. Hernandez's sentence began on January 25, 2016, and he filed this petition while at the Federal Prison Camp in Duluth, Minnesota ("FPC Duluth") on January 5, 2024. (Doc 1 at 1.) He is currently located at the Long Beach Residential Reentry Management facility in Long Beach, California, with a projected FSA release date of April 5, 2025. BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Oct. 24, 2024); (Doc. 7 ¶ 12.)

**The First Step Act, PATTERN Score, and FSA Time Credits.**

Congress enacted the FSA in 2018, and it directed the United States Attorney General to develop a "risk and needs assessment system" that classifies a prisoner's recidivism risk as low, medium, or high to determine an individual's readiness for transfer to prerelease custody or supervised release. 132 Stat. 5194 (2018); 18 U.S.C. § 3632(a). The Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") is a part of the Attorney General-developed system that the BOP uses to classify inmates' recidivism rates. 18 U.S.C. §§ 3632(a)–(b). Inmates are periodically reassessed for regression or progression based on factors like age of conviction and assessment, disciplinary history, number and type of programs completed, drug treatment, and education status, among others. *Id.* § 3632(a)(4); U.S. Dep't of Justice, *The First Step Act*

*of 2018: Risk and Needs Assessment System – UPDATE 9*, 39–41 (2020), https://perma.cc/2ATT-QG8F.

Congress explicitly included incentives within the FSA to encourage prisoners' participation in evidence-based recidivism reduction ("EBRR") programming and productive activities ("PAs"). *See, e.g.*, 18 U.S.C. § 3632(d). Among the available incentives are FTCs. *Id.* § 3632(d)(4). Up to 365 credit days may be applied toward reducing a prisoner's overall custodial term. *See id.* § 3624(g)(3). Any time credits in excess of 365 days that cannot apply to shortening a prisoner's custodial term may be applied to an early transition to prelease custody (i.e., time spent in an RRC or on home confinement). *See id.* § 3632(d)(4). Prisoners may earn FTCs at 10- to 15-day rates for every 30 days spent in an EBRR program. *Id.* Individuals with a "low" PATTERN score earn 10-day credits for every 30 days. *Id.* § 3632(d)(4)(A)(i). Once a prisoner maintains a "low" PATTERN score over two consecutive assessment periods, they are eligible to receive FTCs at the 15-day rate. *Id.* § 3632(d)(4)(A)(ii). The BOP interprets this to require that individuals "have a PATTERN score of low or minimum on 3 occasions – first at the initial 'determination' and then over 2 'consecutive assessments' as part of the 'periodic risk reassessment' process under section 3632(d)(5)."[2] (Doc. 6 at 17.)

---

[2] The Court observes that, with the Supreme Court's decision in *Loper Bright Enter. v. Raimondo*, 144 S. Ct. 2244 (2024), the deference of courts to such BOP interpretations has changed. However, as the Court understands his petition, Mr. Hernandez does not challenge the BOP's interpretation of the FSA as it applies to the accrual dispute here, and the Court thus does not reach any issues of statutory interpretation related to rate accrual.

3

**Mr. Hernandez's FTCs.**

Mr. Hernandez's initial PATTERN score determination was on December 28, 2022. (*Id.* at 19.) He received two subsequent assessments on June 26, 2023, and December 23, 2023, respectively. (*Id.*) Mr. Hernandez therefore should have begun earning FTCs at the 15-day rate beginning on December 23, 2023. (*Id.*) There is no dispute over this start date for this accrual rate, as Mr. Hernandez agrees with the BOP's determination that he became eligible to accrue 15-days of FTCs for every 30 days of eligible programming beginning on December 23, 2023. (Doc. 1 at 2.)

On December 4, 2023, shortly before he completed two assessment periods with a "low" PATTERN score and was set to begin accruing FTCs at a rate of 15-days for every 30 days of programming, Mr. Hernandez filed an Informal Resolution Form ("BP-8") to request "a formal analysis of his FTC dates, Second Chance Act of 2007 eligibility, and 18 U.S.C. [§] 3621 factors." (Doc. 1 at 2.) Warden Eischen responded to Mr. Hernandez's BP-8, informing him that "RRC placement decisions [are] made on an individual basis" without any specific statutory requirements about the outcome of those decisions, and that "[a] review of his request revealed . . . a seven-month RRC placement recommendation and an additional 205 FSA credits," making his transition date to an RRC "approximately March 1, 2024." (Doc. 1-1 at 1.) The Warden also emphasized that "this is only a recommendation and an actual placement date will be decided by the Residential Re-Entry Management office in your releasing district."[3] (*Id.*)

---

[3] According to Respondent, generally, "an inmate's Unit Team will review him for up to a one-year pre-release RRC placement and/or the appropriate length of home confinement

Disagreeing with the BOP's calculations, Mr. Hernandez filed the instant petition. (Doc. 1.) The Court understands Mr. Hernandez to be challenging the total amount of FTCs that he has earned toward placement in an RRC or home confinement.[4] Mr. Hernandez claims that he has completed 1,624 eligible days of EBRR programming when he was earning "at a factor of 10 days per month," which would amount to 541[5] total accrued FTCs. (*Id.* at 1–2.) Mr. Hernandez claims that this accrual should have resulted in placement in an RRC or on home confinement "some time near or around the 20th of January, 2024," rather than on March 1, 2024. (*Id.* at 2.) He argues the BOP's miscalculations cost him "nearly 25 days of time credit, and forc[es] him to serve nearly a month extra of incarceration versus the opportunity of seeking more time in RRC/home confinement status." (*Id.* at 3.)

The government construes Mr. Hernandez's petition to challenge only the date on which he should have begun earning FTCs at the 15-day rate. It argues that the BOP correctly determined that Mr. Hernandez's eligibility date for earning 15 days for every 30 days of EBRR programming was December 23, 2023. It calculates that Mr. Hernandez has earned 585 FTCs, 365 of which go toward his early release, and the remaining 220 of which

---

approximately 17–19 months before his projected release date." (Doc. 7 ¶ 17.) The BOP's internal policy is "that although all inmates are *eligible* for up to 12 months in a pre-release RRC placement under the Second Chance Act, not all inmates are *appropriate* for such a placement." (*Id.* (emphasis in original).)
[4] Out of an abundance of caution, the Court will consider whether Mr. Hernandez also seeks an earlier start date to his period of supervised release later in this Report and Recommendation.
[5] A review of the BOP's calculation of Mr. Hernandez's earnings shows that he has earned more FTCs than Mr. Hernandez's calculation, as the Court understands it. (*Compare* Doc. 1 at 1–2 *with* Doc. 7 ¶¶ 9–11.)

5

go to his prerelease placement in an RRC or on home confinement. The government's brief also confirmed that, during the pendency of Mr. Hernandez's petition, the "Unit Team staff reviewed Hernandez for prerelease placement and is recommending a 7-month RRC placement under the Second Chance Act plus his 220 days of FTCs, which results in a recommended RRC/home confinement placement beginning in February 2024." (Doc. 6 at 12; Doc. 7, Winger Decl. at 6.) Finally, the government argues that, regardless of the date that Mr. Hernandez begins his prerelease placement, the decision about when to place a prisoner in an RRC or on home confinement is left to the BOP, not the Court.

Upon review of the parties' briefs and the record, the Court concludes that an evidentiary hearing is unnecessary here to make findings and a recommendation on Mr. Hernandez's petition. *See Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995); *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). For the reasons that follow, the Court recommends that Mr. Hernandez's petition be denied.

## ANALYSIS

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325–26 (1867). Through habeas, prisoners may petition a court to require their "jailer to justify the[ir] detention under the law." *Jorgensen v. Birkholz*, No. 20-cv-2349 (NEB/DTS), 2021 WL 3476709, at *5 (D. Minn. Feb. 18, 2021) (quoting *Peyton*, 391 U.S. at 58), *R. & R. adopted*, 2021 WL 2935641 (D. Minn. July 13, 2021), *appeal dismissed*, No. 21-2786, 2021 WL 6808428, at *1 (8th Cir. Sept. 27, 2021). Under 28 U.S.C. § 2241—a habeas statute for prisoners in federal custody—federal courts

have the jurisdiction to determine whether a prisoner's custody violates federal law. 28 U.S.C. § 2241(c)(3).

I. **THE TIME-SENSITIVE NATURE OF THE COURT'S REVIEW OF THIS PETITION JUSTIFIES EXCUSING MR. HERNANDEZ'S ADMINISTRATIVE EXHAUSTION REQUIREMENT.**

As a threshold matter, the Court notes that Mr. Hernandez asks the Court to waive his administrative exhaustion requirement. (Doc. 1 at 4.) Respondent appears to take no position on this issue. (*See generally* Doc. 6.)

Federal prisoners must generally exhaust their administrative remedies before seeking relief through a writ of habeas corpus. *See Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) ("A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP."); *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). Failing to exhaust administrative remedies before filing a habeas petition often results in its denial. *See, e.g.*, *Masri v. Watson*, No. 16-cv-4132 (MJD/FLN), 2017 WL 1131891, at *1 (D. Minn. Feb. 17, 2017), *R. & R. adopted*, 2017 WL 1131884 (D. Minn. Mar. 24, 2017); *Knox v. United States*, No. 16-cv-879 (WMW/KMM), 2016 WL 6022940, at *1 (D. Minn. Oct. 13, 2016).

There are, however, two exceptions to this rule. First, courts excuse the exhaustion requirement where "administrative remedies would be futile and serve no useful purpose." *Flynn v. Eischen*, No. 22-cv-1265 (ECT/LIB), 2022 WL 18461620, at *2 (D. Minn. Oct.

7

26, 2022), *R. & R. adopted*, 2023 WL 415162 (D. Minn. Jan. 25, 2023); *see also Elwood v. Jeter*, 36 F.3d 842, 844 n.1 (8th Cir. 2004) (waiving the exhaustion requirement based on the government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile."). Second, courts excuse the exhaustion requirement in cases involving time-sensitive, potentially moot issues. *See O'Hara v. Rios*, No. 8-cv-5160 (JRT/JJK), 2009 WL 3164724, at *4 (D. Minn. Sept. 28, 2009) (waiving the exhaustion requirement where "awaiting the final response of the Central Office would potentially prejudice—indeed would likely make moot—any court action brought at a later time"). The latter exception applies to Mr. Hernandez's case. Taking into consideration Mr. Hernandez's attempt to avail himself of his administrative remedies[6] and the timeframe of this case,[7] the Court concludes that the exhaustion requirement should be waived.

## II. TO THE EXTENT THAT MR. HERNANDEZ SEEKS EARLIER PRERELEASE CUSTODY, THIS CLAIM IS BOTH MOOT AND IS NOT A COGNIZABLE HABEAS CLAIM.

The Court understands that the BOP placed Mr. Hernandez on prerelease custody at an RRC—the Long Beach Residential Reentry Management facility in Long Beach, California—during the pendency of this petition. *See* BOP, *Find an Inmate*, *supra*. If a petitioner receives the relief that they petitioned to receive by court order, the petition

---

[6] Mr. Hernandez filed a BP-8 on December 4, 2023. (Doc. 1 at 2.)
[7] Mr. Hernandez filed this petition on January 5, 2024, with an impending transfer to an RRC in the coming months. (*See* Doc. 1 at 1.)

becomes moot because there is no longer a live case or controversy for a court to resolve.[8] *See, e.g.*, *Hedeen v. Rardin*, No. 22-cv-2278 (NEB/DTS), 2023 WL 6065336, at *1 (D. Minn. Aug. 30, 2023) ("Because he has been transferred to an RRC, [petitioner] has obtained all the relief this Court could provide, rendering his petition moot."), *R. & R. adopted*, 2023 WL 6065330 (D. Minn. Sept. 18, 2023). Mr. Hernandez was transferred to an RRC not long after he filed his petition, rendering his claim moot.

There are exceptions to the mootness doctrine. Mr. Hernandez's petition may not be moot if:

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Ahmed v. Sessions*, No. 16-cv-2124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017) (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002)), *R. & R. adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017). None of these exceptions apply. First, Mr. Hernandez did not identify a cognizable injury in his petition. If a petitioner does not state an injury, there cannot be any surviving collateral injuries. *See Alvarado-Ortiz v. FPC Yankton*, No. 22-cv-206 (NEB/ECW), 2022 WL 4358112, at *2 (D. Minn. July 27, 2022)

---

[8] Federal courts have the authority to adjudicate only actual, ongoing cases or controversies. *See Am. United for Separation of Church and State v. Prison Fellowship Ministries*, 509 F.3d 406, 420–21 (8th Cir. 2007). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003) (quotations omitted).

(finding no collateral consequences resulting from the petitioner "not being released as early as he believed he should have been"), *R. & R. adopted*, 2022 WL 4357544 (D. Minn. Sept. 20, 2022). Second, this case is not "capable of repetition yet evading review" because Mr. Hernandez will not be incarcerated again for the same offense. *See In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.*, 487 F.3d 1190, 1193 (8th Cir. 2007) (noting that the capable-of-repetition exception applies when there is a "reasonable expectation" that the same party "will be subjected to the same action again"). Third, the BOP is not free to resume Mr. Hernandez's incarceration at any time. In the scenario Mr. Hernandez returns to prison, it would be due to a separate violation and facts other than those involved in the present petition. Finally, this case does not involve a class of petitioners. Mr. Hernandez's petition is therefore moot because he has already received the relief he sought in this petition (albeit not at the time he wished), and he does not qualify for an exception.

Additionally, even if this petition were not moot, federal district courts can only consider legal disputes about the *fact* or *duration* of a person's federal custody in habeas petitions. *Spencer v. Haynes*, 774 F.3d 467, 470–71 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). If a petitioner does not challenge the fact or duration of their confinement, then "a habeas petition is not the proper claim to remedy [their] alleged injury," and this Court lacks jurisdiction over the matter. *Spencer*, 774 F.3d at 470; *see also Kruger*, 77 F.3d at 1072 ("If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy.").

10

Challenging the *place* of confinement—i.e., asking to be placed in an RRC or on home confinement—is not a cognizable habeas claim. *Milch v. Segal*, No. 23-cv-838 (NEB/LIB), 2023 WL 6626591, at *2 (D. Minn. June 15, 2023) (citing *United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (further citations omitted)), *R. & R. adopted*, 2023 WL 6623707 (D. Minn. Oct. 11, 2023). This is because prisoners do not have a constitutional right to be considered for RRC or home confinement placement. *Khdeer v. Paul*, No. 18-cv-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018) (prisoners do not have a "constitutionally protected liberty interest in serving [their] sentence at a particular institution") (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996)), *R. & R. adopted*, 2019 WL 79318 (D. Minn. Jan. 2, 2019)); *see also United States v. James*, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020) ("[I]t is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement."); *Houck*, 2 F.4th at 1085 (home confinement is a place of confinement); *Elwood v. Jeter*, 386 F.3d 842, 846 (8th Cir. 2004) (a halfway house is a place of confinement). Consequently, the Court finds that Mr. Hernandez does not state a cognizable claim based on his challenge to the place of his confinement. Whether the location of Mr. Hernandez's incarceration should have changed when it did is thus not an issue that the Court has jurisdiction to consider.

Mr. Hernandez disagrees with this conclusion, citing two cases from outside of this Circuit, *Aipoalani v. Derr*[9] and *Huihui v. Derr*,[10] as evidence that the Court should recommend his petition be granted because these cases represent "the exact same scenario that Hernandez presents to this Honorable Court." (Doc. 1 at 3.) These cases, however, contain facts that are different from the facts here. *Aipoalani* is not analogous because the petitioner there challenged his projected release date. 2023 WL 6541474, at *1. Here, Mr. Hernandez only challenges his *prerelease* date for RRC or home confinement placement—an incognizable claim. (*See* Doc. 1 at 1, 4.) Likewise, *Huihui* involved a petitioner who was prevented from earning FTCs because she was mischaracterized as an ineligible holdover inmate despite being incarcerated at a participating BOP facility. 2023 WL 4086073, at *4–5. No such issue is present here.

In sum, because Mr. Hernandez's request to be transferred to an RRC or home confinement challenges the place of his confinement, not the fact or duration of that confinement, a writ of habeas corpus is not the proper remedy to obtain the relief he seeks. This Court therefore lacks subject-matter jurisdiction over Mr. Hernandez's petition, and it must be dismissed.

---

[9] No. 23-cv-375 (DKW/WRP), 2023 WL 6541474 (D. Haw. Oct. 6, 2023), *appeal dismissed*, No. 23-2779, 2024 WL 1574353 (9th Cir. Jan. 19, 2024). Plaintiff cites this as *Aiopoalan v. Derr*. (Doc. 1 at 3.)
[10] No. 22-cv-541 (JAO/RT), 2023 WL 4086073, at *3 (D. Haw. June 20, 2023). Plaintiff cites this as *Huiftui v. Durr*. (Doc. 1 at 3.)

### III. THERE IS NO DISPUTE ABOUT THE PROJECTED END DATE FOR MR. HERNANDEZ'S CUSTODIAL SENTENCE AND THUS NO CLAIM RELATED TO THE DURATION OF HIS CONFINEMENT.

For the sake of thoroughness, and under its duty to construe a pro se petitioner's petition liberally, *see Frey v. Schuetzle*, 78 F.3d 359, 361 (8th Cir. 1996) (noting that Eighth Circuit courts must follow the "general rule [that] a *pro se* habeas petition must be given a liberal construction"), the Court next considers whether Mr. Hernandez actually seeks an order for his FTCs to be applied to his release from incarceration into his term of supervised release. This would amount to a challenge to the length of his detention, which *is* cognizable in a habeas petition. *See Kruger*, 77 F.3d at 1072 (explaining that petitioners may challenge "the length of [their] detention, such as loss of good time" outside of custody). Viewing the petition's claims liberally, Mr. Hernandez states that "[t]his petition for relief seeks for [his earned FTCs] to be applied towards Petitioner's release" and claims that he "is simply requesting what he has worked so hard for, and remained patient for so that he can return to his family . . . after being gone for so long." (Doc. 1 at 1, 4.)

Mr. Hernandez's efforts to better himself through BOP programming are, judging by his petition, substantial and commendable. Still, based on the record before the Court, there appears to be actual dispute over the projected application of Mr. Hernandez's earned FTCs to his release from incarceration. Specifically, the parties appear to agree that Mr. Hernandez has accrued the full 365 days of FTCs that can be applied against his sentence pursuant to 18 U.S.C. § 3624(g)(3), giving him a projected release date of April 5, 2025. (*See* Docs. 1 at 1–2; 1-1 at 1; 6 at 12; 7 ¶ 12; 7-1 at 3.) Without any dispute over the lawful

duration of Mr. Hernandez's time in the BOP's custody, the Court recommends that this petition be denied.

## RECOMMENDATION

Based on the above, and on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Matthew Hernandez's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) be **DENIED AS MOOT** and for lack of subject-matter jurisdiction; and

2. This matter be **DISMISSED WITHOUT PREJUDICE**.

Date: October 28, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served with a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).